**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:21-1669** |
| **v.** | : | **(JUDGE MANNION)** |
| **DEP'T. OF CORR., *et al*.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. BACKGROUND**

On September 28, 2021, Plaintiff, Charles Talbert, an inmate confined at the State Correctional Institution, Camp Hill ("SCI-Camp Hill"), Pennsylvania, filed the above caption civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint, which was filed on December 9, 2021. (Doc. 21). Plaintiff raises two claims; a retaliation claim for the filing of Civil Action No. 21-cv-1231 and a claim of deliberate indifference to his serious medical needs with respect to his digestive and back issues. Id. The named Defendants are the Department of Corrections ("DOC"); John Wetzel, former DOC Secretary; Margaret Gordon, DOC Dietary Management Services Specialist; and the following SCI-Camp

Hill employees: Superintendent Harry, Unit Manager Ritchey, Officer Benning, Health Care Administrator Herb, and Dr. Voorstad. Id.

On January 13, 2022, Plaintiff filed a "motion to withdraw", in which Plaintiff requests to "withdraw all First and Fourteenth Amendment claims that he has against Defendants Laurel Harry, Brad Ritchy and Officer Benning and thus, dismiss all claims against them." (Doc. 42). Thus, the Court will dismiss Plaintiff's retaliation claim against the Defendants and they will be dismissed from the above captioned action. Accordingly, Plaintiff's motion for sanctions (Doc. 30) against these Defendants will be dismissed as moot.

Presently before the Court are remaining Defendants' motions to dismiss, (Docs. 53, 56) as well as various other motions filed by Plaintiff, including a motion to file a second amended complaint, (Doc. 63) and two motions for temporary restraining orders and preliminary injunctions. (Docs. 24, 84). The motions are all ripe for disposition. For the reasons that follow, the Court will grant Defendants' motions to dismiss, deny Plaintiff's motion to file a second amended complaint, deny Plaintiff's motions for preliminary injunctive relief and dismiss Plaintiff's remaining motions.

- 2 -

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff's "health care claims" allege the following:

Plaintiff has been diagnosed and treated for more than 10 years with:

>A. A faulty digestive system due to the surgical removal of his colon, which causes food nutrients to not properly absorb into his system unless being fed in proper quantitative portions.

>B. Excruciating lower-back muscle spasms, caused by 2 herniated discs.

Defendants DOC, Wetzel and Gordon are constitutionally obligated to establish and maintain policies and procedures for all inmates to receive therapeutic diets that are medically appropriate for the inmates needs. However, the DOC, Wetzel and Gordon has failed to establish a policy or procedure for inmates with serious digestive medical conditions such as Plaintiff's to receive therapeutic diets like all other inmates with serious medical conditions receive.

On or about August 20, 2021, Plaintiff had went to Holy Spirit Hospital in Camp Hill, Pennsylvania and after being properly evaluated, diagnosed, and treated, the treating physician had instructed Defendants Herb and Voorstad to provide Plaintiff with both:

>A. Flexeril muscle relaxants for his aforesaid chronic and acute lower back muscle spasms.

>B. "Double portions" of food ongoing to ensure that he retained proper nutrition.

However, Herb, Voorstad and Gordon had knowingly and gross negligently failed to honor the hospital's orders and in so doing deprived Plaintiff of a medical prescribed and a medically required therapeutic double portion diet.

- 3 -

Voorstad and Herb had failed to provide Plaintiff his prescribed Flexeril muscle relaxants for no medical reasoning and due to this specific medication allegedly not being part of the DOC's formulary list of medications.

As a proximate result of the DOC, Wetzel, Gordon, Herb and Voorstad's aforesaid acts and omissions, Plaintiff:

> A. Was denied equal access to therapeutic food diets as other similarly situated in violation of his Fourteenth Amendment Constitutional right.

> B. Was denied equal access to food services in violation of Title II of the Americans with Disabilities Act.

> C. Was discriminated against on account of his digestive disability.

> D. Was denied access to prescribed treatment in violation of his Eighth Amendment Constitutional right.

> E. Suffered and continues to suffer from unnecessary excruciating muscle spasms along with hunger pain and malnutrition.

> F. Aggravation to his preexisting mental health issues, mental anguish, and intentional infliction of emotional distress.

(Doc. 21 at 4-6). For relief, Plaintiff "demands judgment against Defendants DOC, Wetzel, Gordon, Herb and Voorstad, for violations of Title II of the Americans with Disabilities Act, and the Eighth Amendment, for an amount in excess of $1,000,000.00 punitive damages, costs, fees and a preliminary injunction." Id.

- 4 -

### III. Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable

for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. DISCUSSION

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa.

2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## A. Claims Against Defendant DOC

Plaintiff names the DOC as a Defendant in this action. The DOC, however, is immune from suit in federal court pursuant to the Eleventh Amendment. See Kreutzberger v. Pa. Dep't of Corr., 684 F. App'x 107, 108 (3d Cir. 2017); Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Moreover, even if the Eleventh Amendment did not bar Plaintiff's claims against the DOC, the DOC is also not a "person" that can be sued under §1983. See Will v. Mich. Dep't of St. Pol., 491 U.S. 58, 70 (1989); Pettaway v. SCI Albion, 487 F. App'x 766, 768 (3d Cir. 2012). The Court, therefore, will grant Defendants' motion to dismiss the DOC as a named Defendant.

## B. Claims Against Defendant Wetzel

For a §1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or

- 8 -

acts that the plaintiff claims violates his rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).

Here, it appears that Plaintiff seeks to proceed against Defendant Wetzel based upon his supervisory position as Secretary of the DOC. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to §1983: (1) "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to

that risk; and (4) the injury resulted from the policy or practice." <u>See</u> Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's amended complaint fails to set forth plausible supervisory liability claims against Defendant Wetzel.  Plaintiff fails to allege facts indicating that Defendant Wetzel personally witnessed staff denying Plaintiff necessary medical treatment and condoned or acquiesced in this behavior. Likewise, there are no facts suggesting that Defendant Wetzel directed staff members to not provide an appropriate diet or medication to Plaintiff. While supervisors cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>See</u> Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  The Court, therefore, agrees that Plaintiff has failed to set forth a plausible supervisory liability claim against Defendant Wetzel and all claims against him will be dismissed.

## C. **Exhaustion**

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. <u>See</u> 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust

irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. §1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court

consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

- 12 -

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

The Supreme Court has considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially

on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

Defendant Voorstad moves for dismissal of Plaintiff's complaint based on Plaintiff's failure to properly exhaust administrative remedies prior to bringing the instant action. (Doc. 54 at 3-7). In support of this argument,

Defendant submits a copy of Plaintiff's grievance history from January 6, 2020 through November 29, 2021. (Doc. 54-2 at 21-38). Out of the 191 grievances filed during this time frame, only four were appealed to final review before the Secretary's Office of Inmate Grievance and Appeals. Id. All four were filed in 2020, well before the filing of the instant action on September 28, 2021. Id. Out of the four that were appealed to final review, only one was filed while Plaintiff was housed at SCI-Camp Hill[1], and it concerned a misconduct Plaintiff received on January 28, 2020. Id. Thus, it appears from Plaintiff's own grievance history that he has failed to exhaust to final review any claims contained within his amended complaint.

Plaintiff does not refute this. In fact, in his brief in opposition, Plaintiff acknowledges that on August 24, 2021 he filed Grievance No. 942277, complaining about health care, specifically, that Defendant Voorstad was not "complying with hospital instructions and ordering Plaintiff twice the normal portion of food ongoing and Flexeril muscle relaxants for Plaintiff's digestive system and lower back conditions." (Doc. 65 at 4). He claims that Nurse Supervisor Hanna Trostle stated in her August 26, 2021 initial grievance

---

[1] The other three grievances appealed to final review dealt with "problems with staff," commissary and mail and were filed while Plaintiff was housed at SCI-Dallas and SCI-Phoenix. Id.

response that "although she couldn't find it in Plaintiff's discharge paperwork from the hospital, any mention as to instructions for double portions, 'it was recommended that the Plaintiff eat small meals more frequently and to use commissary as the meals between breakfast, lunch and dinner provided by the DOC'." Id. Plaintiff states that "even though [he] was denied an order for double portions, he was given medical permission to buy commissary food, to which was 'the action taken to resolve the issue of Plaintiff's digestive system condition." Id. Thus, he claims that he was "content with having access to food from the commissary vendor, since he could choose what foods to purchase" and that "at the time of being denied double portions, he had no reason to appeal." Id. However, he alleges that "when the Plaintiff was denied access to commissary by the DOC, Plaintiff was well beyond his time to appeal" and that "if [he] knew that the DOC wouldn't honor their own medical staff's recommendations", he "would have reasonably appealed." Id. Thus, Plaintiff believes that the failure to exhaust "is of no logical fault of his own." Id. Unfortunately, Plaintiff's belief that the further pursuit of the administrative process was futile or needless because he was satisfied with his situation as of August 26, 2021, the date of the initial grievance response, does not excuse his failure to exhaust his available administrative remedies. Rather, as the foregoing discussion demonstrates, Plaintiff is only excused

from failing to appeal to final review prior to bringing his federal claim if he can demonstrate that the administrative review process was "unavailable." The circumstances described by Plaintiff do not demonstrate that the DOC's administrative remedy process was unavailable to him. He does not suggest Defendants interfered with his ability to complete all three tiers of the DOC's administrative remedy process; instead, he admits to terminating his grievance appeal efforts because he believed he obtained a favorable outcome with respect to being able to purchase items to satisfy his diet from the commissary. Thus, the full prison administrative remedy process was available to Plaintiff. However, because he chose not to appeal, file an extension of time to appeal or even file a new grievance regarding his medical issues, does not make the grievance procedure unavailable to Plaintiff under Ross. The PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements. The Court, therefore, finds that Plaintiff failed to exhaustion administrative remedies with respect to any claim raised in his amended complaint. Having determined that dismissal of Plaintiff's claims is proper because he failed to exhaust his administrative remedies, the Court need not address the merits of Plaintiff's claims.

### D. **Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure provides:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Plaintiff's motion is governed by Rule 15(a)(2). Under that subsection, while leave should be given freely, district courts have the discretion to deny a motion for leave to amend where it is apparent from the record that: (1) there is undue delay, bad faith or dilatory motive; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. See Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000). Amendment is futile "if the amended complaint would not survive a motion to dismiss." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014).

Plaintiff's motion for leave to file a second amended complaint (Doc. 63) will be denied. Plaintiff's proposed second amendment complaint again raises the same denial of medical needs contained in his amended

complaint, specifically, the alleged denial "a therapeutic diet program to meet [his] medical needs." (Doc. 64-1). As Plaintiff's grievance history reveals, and Plaintiff, himself, confirms, Plaintiff has failed to exhaust his administrative remedies with respect to these claims. Thus, Plaintiff, despite his arguments to the contrary, had an administrative remedy available to him to challenge his medical needs. Given this, there is no reason to excuse Plaintiff's failure to exhaust his administrative remedies and leave to amend would thus be futile. Thus, Plaintiff's motion to file a second amended complaint will be denied.

### E. **ADA Claim**

Plaintiff raises a claim under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA") based on not getting double portions of food and Flexeril. (Doc. 21).

The ADA claims against the named defendants fail as a matter of law. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132; see Bowers v. National Collegiate Athletic Assn, 475 F.3d 524, 553 n.32 (3d Cir. 2007). Individual Defendants such as Wetzel, Dr. Voorstad, Beth Herb, and

Margaret Gordon, are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to suit. See Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."). Moreover, providing inadequate medical care, even if related to a disability and even if such conduct amounts to negligence, is not actionable discrimination under the ADA. See Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)). "The ADA prohibits disability-based discrimination, not inadequate treatment for the disability." Kokinda v. Pennsylvania Dep't of Corr., 663 F. App'x 156, 159 (3d Cir. 2016).

Finally, Plaintiff's allegations fail to support the fourth element that such denial or discrimination was "by reason of his disability." Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012) (affirming dismissal of claim under ADA where plaintiff's complaint "merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability."). Allegations that "Defendants acted with malice against Plaintiff based on his having a disability" is conclusory and unsupported by specific factual allegations from which a plausible inference of discriminatory animus can be drawn. See, e.g.,

Mitchell v. Walters, No. 2:10-cv-1061, 2010 WL 3614210, at *6 (D.N.J. Sept. 8, 2010) (holding that, to survive a motion to dismiss, a claim of discrimination must be based on more than "suspicion, speculation and conclusory assertions"). Accordingly, Defendants' motions to dismiss Plaintiff's ADA claims will be granted.

### F. Equal Protection

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[ ] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. See id. "[A]t the very

least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007) (nonprecedential). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations ... that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] ... were treated in a dissimilar manner" will not suffice. Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (nonprecedential) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

As an initial matter, neither prisoners nor indigent individuals constitute a suspect class. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2011). Thus, Plaintiff fails to allege that he is a member of a suspect class. Moreover, Plaintiff fails to allege facts suggesting that he was intentionally treated differently from other similarly situated SCI-Camp Hill inmates. Plaintiff's allegations amount to nothing more than conclusory language and bald assertions. See Young, 160 F. App'x at 266. The Court will grant Defendants' motions to dismiss Plaintiff's Fourteenth Amendment equal protection claim.

- 22 -

### G. **Motions for Preliminary Injunctive Relief**

Also pending before the Court are Plaintiff's motion for temporary restraining order and motion for preliminary injunction in which Plaintiff requests the Court order that "Defendants refrain from denying Plaintiff access to the commissary vendor to purchase food items" (Doc. 25) and that Defendants "cease and desist all forms of retaliation against Plaintiff for the filing of this civil action." (Doc. 84).

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (quoting Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010) ). See also Fed. R. Civ. P. 65. Because a preliminary injunction is an extraordinary remedy, the party seeking it must show, at a minimum, a likelihood of success on the merits **and** that they likely face irreparable harm in the absence of the injunction. See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000); Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989). Where the requested preliminary injunction "is directed not merely at preserving the *status quo*

but ... at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Thus, a request for any form of mandatory prospective relief in the prison context "must always be viewed with great caution because judicial restraint is specially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).

Additionally, there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010); see also Adams v. Freedom Forge Corp., 204 F.3d 475, 489-90 (3d Cir. 2000) (affirming denial of injunction where plaintiffs' harm was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction affords").

As the Third Circuit made clear in Ball v. Famiglio, 396 Fed.Appx. 836, 837-38 (3d. Cir. 2010), a plaintiff fails to meet the requirements for injunctive relief when the individuals whose conduct he hopes to enjoin are not named as defendants in the action and the relief sought is completely unrelated to the allegations in the complaint. Moreover, as this Court noted in Kates v. Bledsoe, 2012 WL 6721069 at *2 (M.D. Pa. 2012), no preliminary injunction should ever be granted on grounds not raised in the complaint since there

is—by the very absence of the issue in the complaint—no likelihood of success on the merits.

Because Plaintiff failed to exhaust his administrative remedies with respect to his therapeutic diet claim, he cannot establish a likelihood of success on the merits, and his motion requesting Defendants refrain from denying Plaintiff access to the commissary vendor to purchase food items to satisfy his therapeutic diet must be denied. Cf. Hankins v. Temple Univ. (Health Scis. Ctr.), 829 F.2d 437, 438 n.1 (3d Cir. 1987) (holding "motion for a preliminary injunction [is] rendered moot by the issuance of the district court's final order on the merits"); Hardy v. Shaikh, No. 1:18-CV-1707, 2019 WL 1756535, at *6 (M.D. Pa. Apr. 19, 2019) (motion for preliminary injunction mooted by determination that plaintiff "failed to exhaust his administrative remedies").

Additionally, based on Plaintiff's failure to prevail on the merits of the instant civil rights action and the fact that Plaintiff's "Emergency Petition to Cease and Desist Retaliation" for filing the instant action bears no relation to the amended complaint in the instant action, the Court will deny Plaintiff's "Emergency Petition to Cease and Desist Retaliation."

## VI. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion to dismiss Defendants Harry, Ritchy and Benning from the above captioned action, grant Defendants' motions to dismiss Plaintiff's complaint, deny Plaintiff's motion to file a second amended complaint, and deny Plaintiff's motions for injunctive relief.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 22, 2022**
21-1669-01

- 26 -