**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:21-1669** |
| **v.** | : | **(JUDGE MANNION)** |
| **DEP'T. OF CORR.,** *et al.,* | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I. BACKGROUND**

On September 28, 2021, Plaintiff, Charles Talbert, an inmate formerly confined at the State Correctional Institution, Camp Hill ("SCI-Camp Hill"), Pennsylvania[1], filed the above caption civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint, which was filed on December 9, 2021. (Doc. 21). Plaintiff raises two claims; a retaliation claim for the filing of Civil Action No. 21-cv-1231 and a claim of deliberate indifference to his serious medical needs with respect to his digestive and back issues. Id. The named Defendants are the Department of Corrections ("DOC"); John Wetzel, former DOC Secretary; Margaret Gordon,

---

[1] Plaintiff is currently housed in the Forest State Correctional Institution, Marienville, Pennsylvania. (Doc. 133).

DOC Dietary Management Services Specialist; and the following SCI-Camp Hill employees: Superintendent Harry, Unit Manager Ritchey, Officer Benning, Health Care Administrator Herb, and Dr. Voorstad. Id.

By Memorandum and Order dated April 22, 2022, Plaintiff's motion to dismiss all claims against Defendants Laurel Harry, Brad Ritchy and Officer Benning was granted. (Docs. 94, 95). The Memorandum and Order also granted the remaining Defendants' motion to dismiss and Defendants Department of Corrections, Secretary Wetzel and Dr. Voorstad were dismissed, as well as Plaintiff's claim under the American with Disabilities Act., 42 U.S.C. §12101 *et seq.* ("ADA"). Id. Plaintiff filed a timely appeal. (Doc. 97).

On June 7, 2023, the United States Court of Appeals affirmed in part and vacated in part, this Court's April 22, 2022 Memorandum and Opinion, remanding the action for further proceedings as to Defendant, Dr. Voorstad, specifically with respect to resolving the factual dispute as to whether prison officials made misrepresentations that rendered the grievance process unavailable. (Doc. 105).

By Order dated June 22, 2023, this Court reopened the above captioned action with respect to Defendant, Dr. Voorstad, and directed Defendant Voorstad to file a motion for summary judgment addressing the

Third Circuit's remand with respect to Plaintiff's claims against him and whether such claims have been exhausted. (Doc. 106).

On July 14, 2023, Plaintiff filed a motion for judgment on the pleadings[2] based on the merits of Plaintiff's complaint. (Doc. 110). However, because the Court of Appeals has already determined that there is a dispute of fact as to exhaustion, (Doc. 107-2 at 5), and "exhaustion of prison administrative remedies is mandatory under the PLRA," Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015), Plaintiff's motion for judgment on the pleadings will be dismissed as premature.

---

[2] Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and, thus, the movant is required "'to clearly establish [ ] that not material issues of fact remains to be resolved and that he is entitled to judgment as a matter of law." Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)).

A district court applies the same standard to a motion for judgment on the pleadings as to a motion to dismiss filed pursuant to Rule 12(b)(6). Thus, when reviewing a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Green v. Fun Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993).

In accordance with the Third Circuit's mandate and this Court's Order, on July 25, 2023, Defendant Voorstad filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. (Doc. 113). The motion is fully briefed and for the reasons that follow, the Court will grant Defendant's motion for summary judgment.

## II.   SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at

257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of

proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v.

- 6 -

Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006)

(*pro se* parties must follow the Federal Rules of Civil Procedure).


## III.   STATEMENT OF FACTS[3]

On August 20, 2021, Plaintiff was evaluated at the Holy Spirit Health Systems hospital in Camp Hill, Pennsylvania, for a fall he sustained at SCI-Camp Hill. (Doc. 121-1 at 2). His chief complaint and history of illness reads as follows:

> Charles Talbert is a 40-year-old male who presents in the ED for evaluation of Fall.
>
> Patient reports that he was shot in the abdomen years ago. He mentions that he had a colostomy for several years that was eventually reversed but his large intestine was removed, per patient. Since then, he mentions he needs to eat twice the normal portions size in order to keep his nutrition to baseline. At the prison, the patient is not allowed to consume twice the normal

---

[3] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 115) will be deemed admitted.

portion. Since Monday night, he has been on a hunger strike. He is not eating or drinking. Today, he felt lightheaded, when standing, and passed out. He struck his face on the ground. He was unconscious for several seconds. He has not walked since. He mentions tingling in his bilateral fingers, worsened chronic lower back pain and cervical spine pain. Patient denies vomiting. He is willing to receive fluids here and requests that his discharge instructions include instructions for a double portion of food. His sugar was low for EMS, into the 70s, but his vitals were otherwise wnl.

Id. Plaintiff was discharged with the following diagnosis:

Based on my history, physical exam, and evaluation, the differential includes, but is not limited to, the following diagnosis: syncope, orthostatic hypotension, dehydration, hypoglycemia, ketosis, facial fracture, concussion, refeeding syndrome.

Patient is a 40 yo male with a history of prior gunshot wound and colectomy (per patient) who presents with syncope after several days of fasting from both food and water. He mentions facial pain since his fall and worsened lower chronic back pain. Vitals were wnl for EMS. Patient was initially provided 2 liters of NSS, thiamine, and dextrose. Labs were significant for anemia, sugar of 73, and normal kidney function. CT head, c-spine, and maxillofacial was ordered. EKG was significant for sinus bradycardia. Given these findings, patient was signed out to Dr. Waller around 3:00 PM for follow up on CT scans. Patient is likely able to be discharged if CT scans are negative for acute findings. Patient was provided instructions to eat twice as much at the prison ongoing.

Id.

On August 21, 2021, Plaintiff filed Grievance No. 942277, in which he states that on August 20, 2021, he was sent to Penn State Health and "returned with a medical order for a prescription of Flexeril for muscle spasms

in [his] lower back and for the medical department to order [him] a medical diet of 'double portions' due to [him] not having a colon to retain [his] nutrients and energy." (Doc. 114-5 at 1). Plaintiff complains that Dr. Voorstad and Dr. Shaikk "refused to acknowledge both medical orders" and as a result he "remain[s] on a hunger strike to fight this oppression and to bring this corruption to light and to "show how far the medical staff will go to interfere with prescribed treatment and deny [him] clinically necessary care." Id. Plaintiff requested damages for relief. Id.

On August 26, 2021, Grievance No. 942277 was denied by Nurse Trostle as follows:

> I have reviewed your grievance in relation to the medication and diet orders from the hospital. After review of the discharge paperwork from the hospital, I found no mention of the diet recommendations that you mentioned in your grievance. It was recommended that you have small meals more frequently, which would allow you to use commissary as the meals between breakfast, lunch and dinner provided to you by the DOC. As far as the medications, the providers at the hospital give recommendations to the providers here. These are just that, recommendations. At times, what is ordered, is not the standard of care given and is not followed. Each inmate's case is reviewed by a provider here and then they determine the best course of action after reviewing the recommendations from the hospital and our standards of care. If the providers did not feel that a particular medication was needed or felt that the same affects could be given with a different medication, that is the right of the medical providers employed by the DOC. Also, there was no prescription sent from the hospital to SCI-CAM on this particular day as it would have been with your discharge information sheet and turned in with that paperwork for review. Therefore, since

there is no evidence of either the medication or diet order you
alleged two providers ignored, this grievance is denied and no
relief is warranted.

(Doc. 114-5 at 2). No further appeal was filed. (Doc. 114-4).

Plaintiff has filed 119 grievances between December 17, 2019, and
November 29, 2021. Id. There is no record of any grievance against
Defendant Voorstad that was filed to final review by Plaintiff in 2019-2021.
Id.

## IV.   DISCUSSION

Defendant Voorstad seeks summary judgment based on Plaintiff's
failure to exhaust his administrative remedies as required by the Prison
Litigation Reform Act of 1996 (the "PLRA"). "The PLRA states that no action
shall be brought with respect to prison conditions under §1983, or any other
Federal law, by a prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are exhausted."
Shifflett v. Korszniak, 934 F.3d 356, 364 (3d Cir. 2019) quoting 42 U.S.C.
§1997e(a) (internal quotation marks and brackets removed).

Mandatory exhaustion statutes like the PLRA foreclose judicial
discretion. Ross v. Blake, 578 U.S. 632, 639 (2016). As explained, "all
inmates **must** [...] exhaust all available remedies[,]" with no exceptions for

"special circumstances" or any judge-made, discretionary exclusions. See id. at 641-42 (emphasis added); see also Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Ross, 578 U.S. at 638. An administrative remedy is "available" when it is "capable of use for the accomplishment of a purpose" which "is accessible or may be obtained." Id. at 642 (quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001)).

Administrative remedies are unavailable in three instances. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 643 (citation omitted). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. at 643-44. As further stated, "[w]hen an administrative process is susceptible of multiple reasonable interpretations ... the inmate should err on the side of exhaustion[,] [b]ut when a remedy is ... essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands – then it is also

unavailable." Id. at 644 (citations omitted). Administrative remedies are also unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

Additionally, "[t]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)).

Not only do prisoners have a duty to exhaust in accordance with prison procedural rules, the prisons themselves must also "comply with the demands of the system they created." Shifflett, 934 F.3d at 365. "[A]s soon as a prison fails to respond to a properly filed grievance or appeal within the time limits prescribed by its own policies, it has made its administrative

remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Id.

Under the PLRA, inmates must comply with the rules and procedures of prison administrative systems and these requirements are drawn from the prison policies in question rather than from any free-standing federal law. Id. at 364 (citations omitted). In cases such as this, the exhaustion requirement requires the inmate to proceed through DOC grievance procedures. The Court takes judicial notice of the Pennsylvania DC-ADM 804 Policy Statement (effective May 1, 2015), captioned Inmate Grievance System, which was in effect at the time of the within alleged incident and sets forth the relevant procedures for inmates to file a grievance. See https://www.cor.pa.gov/pages/search.aspx. DC-ADM 804 requires a prisoner to present his grievance to the Facility Grievance Coordinator for "initial review" within fifteen (15) days after the events leading to the grievance. Id. at 1-2. The Facility Grievance Coordinator/designee shall assign a grievance tracking number to every grievance (even a rejected grievance) upon receipt and enter every grievance into the Automated Inmate Grievance Tracking System. Id. at 1-6. Per this policy, "the response shall be provided to the inmate" from the designated Grievance Officer "within 15 working days from the date the grievance was entered into the

Automated Inmate Grievance Tracking System[.]" Id. at 1-7. An inmate may appeal an initial review response/rejection to the Facility Manager within fifteen (15) days from the date of the initial review/rejection. See id. at 2-1. The Facility Manager shall notify the inmate using the Facility Manager's Appeal Response of his/her decision within fifteen (15) working days of receiving the appeal. Id. at 2-2. To fully exhaust, an inmate who is dissatisfied with the disposition of an appeal to the Facility Manager must then file an "appeal to final review" to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Id. at 2-6.

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

### 1. Exhaustion Through DC-ADM 804 Procedures

Defendant Voorstad advances evidence that Plaintiff failed to appeal the relevant grievance under the processes set forth in DC-ADM 804. The record reflects that Plaintiff filed Grievance No. 942277 concerning the alleged denial of proper medical diet and medication. (Doc. 114-5). The Facility Grievance Coordinator signed the grievance on August 24, 2021, advising plaintiff that it was received and would be processed in accordance with DC-ADM 804. Id. The grievance was assigned to Nurse Hanna Trostle. Id. Her denial of the grievance, dated August 26, 2021, indicates that Plaintiff was not returned from the hospital with an order for medication or a medical diet that was "ignored" by Defendant Voorstad. Id.

Defendant Voorstad also submitted a declaration from Keri Moore, Assistant Chief Grievance Officer in the SOIGA. (Doc. 114-4, ¶ 2). Ms. Moore's declaration indicates that she reviewed the DOC's Automated Inmate Grievance Tracking System for any grievances filed by Plaintiff related to the August 21, 2021 alleged denial of medication and medical diet. (Id. at ¶ 6). Per Ms. Moore, her review of all of Plaintiff's grievance records revealed that Plaintiff did not appeal Grievance No. 942277 to final review, nor did he file any grievance between 2019-2021 that was appealed to final view involving Defendant Theodor Voorstad, MD. Id. at ¶ 7.

### 2. Availability of Administrative Remedies

Once a Defendant has established that an incarcerated person failed to exhaust administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable to him." Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018)(citation omitted). Plaintiff argues that the grievance process was unavailable to him due to Grievance Coordinator Trostle's misrepresentation in her response, which "hindered Plaintiff from taking further advantage of the DOC's Grievance Appeal Process, making it unavailable." (Doc. 121 at 4). The Court disagrees.

As noted above, a prison grievance process is unavailable and may be deemed exhausted in three circumstances: "(1) when the remedy operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when it is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Hardy v. Shaikh, 959 F.3d 578, 584 (3d Cir. 2020)(quoting Ross, 578 U.S. at 643-44)(internal quotations omitted).

Here, Plaintiff offers nothing to indicate that the administrative process was unavailable because officers were unwilling or unable to provide relief

or that the administrative process was so opaque that it was incapable of use. Rather, Plaintiff argues that he did not file an appeal because of the misrepresentation made by Trostle in her response. Such argument, however, does not align with the exceptions set forth in <u>Hardy</u> and <u>Ross</u>.

In <u>Ross</u>, a prisoner reported an assault claim against a correctional officer to a senior officer. The senior officer felt the claim should be investigated and referred the claim to the Maryland prison system's, Internal Investigation Unit ("IIU"). The IIU condemned the actions of one correctional officer and did not comment on the other. The prisoner did not file a grievance in the available prison system, thinking the IIU complaint was enough. The Court wanted more information concerning the interplay between the IIU and the prisoner's grievance process.

In <u>Hardy</u>, a prisoner filed a grievance regarding medical care which was rejected by the grievance officer for a variety of reasons. He was told what he had to do to file another grievance. However, when he filed his new grievance that was rejected because of procedural rules.

The Supreme Court in both <u>Ross</u> and <u>Hardy</u> discussed the meaning of the term "exhausting available remedies," finding that the prison must have administrative procedures available so an inmate can voice a dispute, the administrative procedure must be easy to understand and navigate and

finally, that administrators shall not thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Here, the DOC has such a policy in place and Plaintiff has availed himself of this process over 119 times prior to initiating the instant action. There is no evidence that prison administrators thwarted Plaintiff from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Plaintiff's argument is that "when Trostle stated in her initial review response to Plaintiff's grievance that, instead of getting double portions as a medical diet, he would be able to have access to food from the commissary vendor, Plaintiff under said status, was entitled to rely on this misleading misrepresentation, to which had a potential of sufficiently interfering with his appeal process if he had to wait over 15 business days to speak with PRC and be denied." (Doc. 121 at 5). He further argues that "[a]fter being misled, he had waited until it was his time to see PRC, which was well over 15 working days" and "such delay caused Plaintiff's ability to appeal and/or renew a grievance about the double portion diet, to become waived per DOC policy." Id.

Here, plaintiff was not deterred from participating in the grievance process, nor was there any misrepresentation in Nurse Trostle's response. Plaintiff chose to misconstrue Trostle's statement that Plaintiff could use

commissary to supplement his meals, as permission to utilize commissary, even though he admits that inmates in disciplinary custody may not use commissary without PRC permission. This does not demonstrate that the grievance process was unavailable to him, or that Trostle, or even Defendant Voorstad interfered or prevented him from utilizing the grievance process. Plaintiff admits that he was aware that commissary is not permitted to inmates in disciplinary custody. Accordingly, a prolific filer, such as Plaintiff, would have immediately recognized the need to appeal Trostle's recommendation to use commissary to supplement his meals. He did not. To the extent that Plaintiff claims that he "didn't receive a PRC response to the commissary issue" until after the time to file an appeal had run, the grievance process was certainly available for Plaintiff to file a new grievance concerning the PRC's denial of commissary.

Thus, the undisputed evidence demonstrates plaintiff failed to appeal to the Facility Manager or to SOIGA under DC-ADM 804. Plaintiff offers no evidence to suggest that the actions of Defendant Voorstad or anyone else at SCI-Camp Hill prevented him from exercising his right to file and appeal grievances within the prison system prior to filing a civil action. Mere assertions without any details to support such claims are insufficient to create a genuine issue of material fact. See Paladino v. Newsome, 885 F.3d 203,

208 (3d Cir. 2018). Plaintiff has not satisfied his burden to demonstrate that exhaustion was unavailable under the case law, and, accordingly, this court will grant Defendant Voorstad's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of Defendant Voorstad and against Plaintiff. Plaintiff's motion for judgment on the pleadings will be dismissed. Plaintiff's motion for sanctions will be denied.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 12, 2024**
21-1669-02